We are now, we'll wait for counsel to get his briefcase. Thank you. We're now in case 0756853, Harold Coleman Hall v. City of L.A. Good morning, may it please the court. My name is Phil Janago and I represent the plaintiff appellant, Harold Hall. I intend to reserve three minutes of my time for rebuttal. The district court's ruling granting summary judgment to the defendants in this case was premised on a legally incorrect ruling as to collateral estoppel. As a result of that erroneous collateral estoppel ruling, the district court did not even consider a much less view in the light and most favorable to the non-moving party, who is the plaintiff here, a lot of facts that support our claim and entitle us to go to trial. The ruling should be reversed as is collateral estoppel, and I'll explain that why in a moment, but what I wanted to also point out is that if the court reverses the collateral estoppel ruling as it should, there's no reason to even reach the summary judgment facts because the district court didn't consider a lot of them. In fact, the defendants in their brief before this court don't talk about a lot of the facts because they say we are precluded from raising them. So the court doesn't even need to reach that, I don't think. If it does, we still have enough facts, but... But isn't this in front of us on summary judgment? It is, Your Honor. Can't we have the same summary judgment in front of us that the district court had? Absolutely, and if you... If the district court has in particular matter some issue preclusion, then don't we also have to determine if there's even a genuine issue of fact about the rest of the argument? It certainly is something the court could do, and I would encourage to do that because I think the facts are there. I'm pointing out that once you take out those, once you take out the collateral estoppel ruling, it would also be appropriate to send it back to the district court, but either way we should prevail. And the reason that the collateral estoppel ruling is erroneous is the district court based its preclusion ruling on a footnote ruling by this court in the prior decision granting Mr. Hall habeas relief on his false evidence claim. So the judgment was in his favor. What the court did in footnote 5 was it said, we looked at the other three claims that Mr. Hall has raised on appeal. We find them without merit. One of those claims as stated by the court of appeal, and this is footnote 5 of the Hall opinion, which is 343F3976, which is in the briefs, of course, but what the court said there was that one of the claims that Mr. Hall raised was that his confession was coerced and involuntary. The district court said, encouraged by the defendant's motion, well, that means you can't contest the voluntariness of your confession or your statement. And once that comes in, you can't prevail on your claims. The reason. That is correct. And the state law is very clearly, as stated in our brief, the Lopez case. What it says is that once the judgment is vacated by a federal court, and it's a very similar case actually involving habeas, once the federal court vacates the underlying judgment on habeas, all the state court rulings are, I think the word is even obliterated, and have no continuing effect. And that makes sense here because a lot of the issues were not able to be adequately addressed in the state habeas because we didn't get enough engineering. But the point is that the, the, I said that it made sense because one of the things we were asking for in the federal habeas hearing was for an evidentiary hearing, and we never had the opportunity to do that. And I, Judge Brandis, you're absolutely correct. The same issue was not adjudicated in the appeal because of the AEDPA. And in addition, a second reason the collateral stop law ruling was erroneous was because the footnote disposition saying that because other claims did not have merit was not necessary to support the judgment. I think an easier way to understand that rule is stated in the Fireman's case, which says that a ruling adverse to the prevailing party does not have preclusive effect. Because that footnote was adverse to Mr. Hall and he was the prevailing party, it can't have preclusive effect. Because he had no opportunity to appeal it, and the other rule that sort of the other, the policy reason that supports that as well is the court's not going to look at it as carefully. So for both of those two reasons, that preclusion ruling was incorrect. Once you take out that preclusion ruling, as I said, it requires the court to examine a lot of facts the district court did not examine because they were precluded. And when you then go back and look at the facts, in the light most favorable to the plaintiff here, which is what the standard is, and take all inferences in his favor, he can prevail in front of a jury on either of the Debrew formulations of a deliberate fabrication of evidence claim. And the first one, of course, is that the defendant knew or should have known that he was innocent and continued to investigate. That's the first Debrew formulation. And on that, there's a lot of facts in the brief that detail why a jury could easily find on his behalf as to that formulation. But the one that I think is important to stress and to clarify is this case is like the McSherry case, which just came down and is cited in our Rule 28 letter. And it's unlike the earlier cases like Debrew and Cunningham and Gobbets where you did not find a claim to state it. And the reason is because, in this case, like McSherry, the police were originally given information that pointed to somebody else. And in this case, the person who it pointed to was Theodory Powell. And it didn't point to him. There were witnesses who said he was with Nola Duncan a few hours before she was killed. There were witnesses who said that Theodory Powell said that he was going to kill her because she sold him bad drugs that evening. Theodory Powell took a polygraph exam, said he had nothing to do with the killing, and the police found him to be conclusively deceptive as to that statement. Counsel, let me ask you a question. Yes. As to the new or should have known, what is my standard of review? I think because that's a summary judgment question, Your Honor, that it's a general review. Well, I understand that. But what is the standard by which I have to find that there's a constitutional violation for these officers? My understanding of the law, Your Honor, is that you have to look at the facts. Can it be just a negligence? Absolutely not. It's got to be the court has got to find that they knew or should have known he was innocent and that they deliberately fabricated false evidence. And that requires this. And in this particular case, has there ever been any court from first to last reviewing this which has ever suggested that he was innocent? No court has ever had an opportunity to adjudicate that, nor has Mr. Hall ever had an opportunity. The jury, even though they heard the informants were telling them that the info they had was favoring the police, that they were trying to get out of their own problem, they still convicted the defendant on the information, right? No, Your Honor. That's not correct because the defendants stated in their brief the informants had not testified until the penalty phase. The only two pieces of evidence the government relied on to convict Mr. Hall were the false notes and there's evidence that would support a finding that former Detective Arneson, who's now been convicted of two serious federal crimes, knew that those notes were false because of the facts that are in the record. And second of all was his statement, which is inconsistent, as this court found in its earlier opinion, with the facts. Those are the only two pieces of evidence they introduced at the guilt phase. What happened was that after that, the jailhouse informant scandal blew up in Los Angeles. In the penalty phase, where Mr. Hall testified that he was innocent, while facing capital punishment, he said he was innocent. At that stage, they brought in one of the jailhouse informants and that was the first time the jury heard how this case started. Well, let's go back to your first point and that is the so-called fabricated notes. What evidence here shows that the detectives knew that those notes were fabricated? There are at least three facts that could allow a jury to find that and they are the following, Your Honor. First of all, Detective Arneson says that he got those notes from Cornelius Lee on September 20th. That's in the record. Cornelius Lee says he never gave them to Detective Arneson. He says he gave them to his lawyer sometime later. Second of all, Detective Arneson goes to present the case to the DAs. Obviously, Cornelius Lee's credibility is very important. The deputy district attorney even says that at that point. The notes would provide some independent corroboration for Cornelius Lee. Nobody ever mentions them. If Detective Arneson had the notes at that point, if he had gotten them on September 20th, he would have presented them at the filing in October. Third, they go out and they actually interview Mr. Lee with the deputy district attorney. This is after September 20th. Arneson still doesn't have the notes. So where do they come from? Well, Detective Arneson had been working with Cornelius Lee from the commencement of this investigation when they switched over to Mr. Hall to frame him. And Cornelius Lee is the source of the information of the facts that they put into Mr. Hall's statement. So a jury could find that Detective Arneson, former Detective Arneson, lied about the source of the notes, lied about how they got to him, and never had them when he said he got them. And the reason that that's important, critically important, is because remember how the notes got into evidence. Detective Arneson took the stand. Cornelius Lee didn't testify at the trial. Detective Arneson took the stand at the trial and said, I've had these notes since September 20th. They need a chain of custody to get those into evidence. And that's why Detective Arneson went ahead and testified falsely as to that, a jury could find, and also knew that Lee had fabricated the notes. They had been involved in this from the beginning, and Lee was the person who fed him a lot of this information. So that would be the basis for finding that piece of information was deliberately fabricated and that Detective Arneson knew or should have known that it was fabricated. No, I don't think that that's enough, Judge Reunas. I think if everything in that statement was true, we would have a problem using that for the first problem because it would not suggest that he's innocent. And I think that it would not be enough to establish a second claim because it did not yield false information. So if it was true, I think that we would have a problem. Honestly, I don't think that it is. I think you've got to show the detectives knew or should have known that the tactics they were using were so inherently coercive that they should have known that it would yield false information. That's my understanding of the law. I'd like it to be what you suggested, but I think we've got a little bit more of a burden, but we need it here. Inherently coercive is what I'm going for. Assuming it was inherently coercive, is that all? If it's coercive and it turns out to be false, is that enough to show that they knew it was false? I think it's knew or should have known, and I think that that would be enough, Your Honor. I think that under that circumstance, if they're using inherently coercive tactics, the standard is they should have known it would yield false information. In this case, of course, they knew at the moment that they were taking that confession that it was false. And the reason that you can – a jury could find that very easily here, and this is the one other fact about the second problem that I want to mention, and then I'm going to sit down to save my time for rebuttal. That is the following. When they go and interview Mr. Hall on September 11th, before that happens, Detective Ornison calls up Detective Duford. Detective Duford has been protecting Mr. Hall in custody because he's a state witness on a gang shooting. Detective Ornison calls up – former Detective Ornison calls up Detective Duford and says, come down to the jail. I'm interviewing Mr. Hall this morning. You've got to be there. Duford says, I don't need to be there. Wrong story. He makes him come down there, and the reason he makes him come down there is because he wants Mr. Hall to know, you can't rely on Duford anymore because I just told him you confessed to the 54th Street shooting, that you were a driver, not a witness. All of that is corroborated by Detective Duford. You know what Detective Ornison says? I never talked to him. I didn't meet him until after the interrogation. And in fact, during the interrogation, I really didn't play a part because I was looking at Richard Ramirez, the night stalker, over in the next booth. Well, not only is that discredited by Detective Duford, but also Detective Martin says he was present when they were interviewing Mr. Hall and playing this cat and mouse game with him when they were feeding information. So that would be enough to find on the second prong as well. With that, I'd like to reserve the rest of my time. Thank you. Good morning, Your Honors. Deputy City Attorney Lisa Berger for the apolis in this case. Starting off with the collateral estoppel, the plaintiff would like this Court to believe that there is no way there can be collateral estoppel effects to this footnote because they won on the habeas appeal. But that's not what the law holds. The question is whether or not the issue was necessarily decided. Now, this Court knows better than I what judges mean when they say things. But this Court specifically said that they found no merit to these issues. We've all seen opinions, and I'm sure you've all written opinions, that say we can... What kind of a case was that? That was in a habeas case, or was it? Are you referring to the case cited by the plaintiff? Yes. I believe that was. I don't recall. Okay. Well, no, what I'm talking about is you're here, you're suggesting that here we have a situation where I can automatically, in this particular habeas ruling in Hall v. Department of Corrections, find that some footnote is going to now be issue preclusion in another type of case. Isn't that what you're arguing? Yes. And what we're really saying is in a habeas case with our court saying that it found no merit to certain issues, and in a footnote that I'm now to suggest in a totally different case that that is issue preclusion, is that your argument? Yes. Because this Court would otherwise have said they didn't need to address those issues. So clearly they did decide them on the merits. Well, it said it just found no merit. How do we know what they were finding no merit on about the confession? I believe the footnote says voluntariness and coercion. Well, it just says no merit that his confession was coerced or involuntary. Well, what are we really looking for there in a habeas proceeding on a no merit finding? Are we finding on a habeas proceeding, we're really looking at more than just whether it was coerced and whether it was involuntary, but we're also looking at did the State court do a bad job of finding it? Or did the State court reasonably apply Supreme Court precedent? That's true. But the cases say that that does not preclude the reviewing court from determining the merits as well. If the panel that ---- Well, if you're in a habeas proceeding and you just say there's no merit on this, his confession was coerced and involuntary as to a habeas proceeding, we may be saying, well, the State has adequately covered it, but we don't agree. But because the State has adequately covered it, we cannot go there. But if the panel that decided the habeas had looked at the record and found there was a constitutional violation despite what the State courts had ruled, it had the authority to say that it was not reasonable. It already had. It already had, if you will, a judgment on behalf of the other side. It already had an issue. It already said that wasn't enough. It said we're not going to address these other issues, and it doesn't say why they weren't going to address them, other than there was no merit. Your Honor, I would just say that I don't believe that the panel would have even bothered to mention it or would have said, as it often does, because we've already ruled in the defendant's favor, we are not going to address those issues. But I will move on. Let's just ---- Well, let's suppose we do move on. Do we need to send this back to the district court? No, Your Honor. I don't believe so. The record is very ---- Well, it seemed to me like your briefs were suggesting that it really wasn't adequately referenced in the district court, that we were really talking about issue preclusion there, and therefore, we ought to go back to the district court. Well, I'm sorry, Your Honor. I believe I briefed quite thoroughly that even without issue preclusion, the evidence showed that they could not show that there was fabrication of evidence, that based on the evidence that was presented in both the summary judgment motion and what pieces there were from the habeas motion, it showed that they couldn't even show they were entitled to a hearing on voluntariness and coercion. And if they didn't have enough evidence to be entitled to a hearing, they certainly didn't have enough evidence to prove coercion or involuntariness. And as was mentioned during the plaintiff's argument, there's no evidence that these officers knew or should have known either that the Mr. Hall was innocent, which we still don't know, or that the informants had made this decision to get advantages by creating false evidence against Mr. Hall. Let me ask you a question. In this motion, you have to give all of the facts to the other party, don't you? I mean, all intendment of the facts, every fact that's in the record, I have to take their version of it for you to win in this motion. Well, all reasonable presumptions, yes. And here we have, okay, I'm just trying to put the facts in perspective. The defendant suggests that he was never given Miranda rights. Now, you can argue about that, but I can't get away from that, because if I'm going to do this, I have to give him every benefit of the doubt. The defendant suggests that he asked for counsel during the interview, but he didn't get it. The defendant suggests that he was worried about his protected status in the jail, and that all this, if he would have been kicked out of the jail and put in the general population, he would have been in trouble. The defendant suggests that you brought Buford, sorry, to the interview, and he accentuates in his last argument the problems that exist in that. The defendant, he suggests that the detectives told him false information to put in his confession. Well, now, if I list all those facts in a row, and I say this is what he suggests, how do I on this motion suggest that that is not abusive or coercive? The all the presumptions in favor of Mr. Hall have to be reasonable, and I would argue that at least some of those things that he claims are not reasonable in light of the other evidence. But if we go to reasonable, aren't we really saying go back and let the jury have a chance to decide? Not if, as a matter of law, they cannot reach that high standard that has been referenced, that the officers knew or should have known, or that they deliberately used false evidence or deliberately coerced. Now, the fact that even if there were no Miranda, that doesn't necessarily make the confession involuntary. Even if there were a violation of his right to counsel, that doesn't necessarily make the confession involuntary. Well, I understand. That's why I didn't stop with just those. That's why I listed the whole list. I mean, at that point, where do we come to a point, given this motion, where we say let the jury decide, even though the standard is high? Because if you take all of the evidence together, there is nothing that shows that the officers believed he was innocent and continued to investigate otherwise, and there is nothing to show that they coerced a false confession. In fact, their very evidence would make no sense if they were attempting to coerce a false confession. Why would they make a confession that had so many inaccuracies in it? Mr. Hall admitted that he talked to the informants and gave them some basic information, what he claims he only knew from the street. So the information that at least the basic information given by the informants to the officers did, in fact, come from Mr. Hall. He admits that he wrote those notes. There's a question as to the extent to which they were changed. But he doesn't deny that. I mean, these notes were not created out of whole cloth. The idea that they weren't given to the DA because they hadn't been created yet is clearly false because Mr. Hall admits that he created them. You would agree with me that if either I find that the detectives knew or should have known that he was innocent, or I find that they used abusive or coercive techniques, they should have known would yield false information, on either of those prongs, I should send it back? If there are disputed issues of fact on either of those prongs, yes. That's correct, Your Honor. Well, then, on the disputed issues, I asked Mr. Genego what evidence there was that the detectives knew that this was false. And he gave three bullets. Remember that question? Now, how do you answer those three bullets? Well, he said that the Detective Arneson must have known that the notes were false because he didn't give them to the DA. That, to me, I don't see how that necessarily follows. We don't know why. I don't recall him ever being asked why he didn't give them to the DA. And there clearly was some memory confusion, whether deliberate or not, as to when and how he got the notes. But, again, there is no evidence to believe that he had any reason to know those notes were false. They were, in fact, written by Mr. Lee and Mr. Hall. If there were changes made to them, there is nothing in the evidence to show that Detective Arneson was aware of it. The request to have Detective Dufert there, again, the evidence is very clear that there was implication of this shooting. And, in fact, after Mr. Hall confessed to the murder, which was about two and a half hours into the interrogation, Detective Dufert and his partner continued to interrogate Mr. Hall for, I believe, ten more hours that evening and again into the next day regarding the shooting. So, clearly, Detective Dufert believed and had reason to believe that there was involvement in that shooting, and that's why he was there. I don't recall what the third thing was. What was the third thing, Mr. Juneau? They interviewed Mr. Lee with the deputy district attorney to test his credibility, and Arneson never brought up the notes, even though he was there for that purpose. It's certainly possible. Again, we don't know why that is, but the district attorney did go and personally interview Mr. Lee and was confident that he was a reliable supporting witness. So if the district attorney believed that he was a reliable witness, there's no reason to believe that the officers wouldn't have made the same conclusion. But even with all of these informants, there might have been differences in the details or whatever, but there was enough substance that was the same and that matched the theme of the crime for them to believe it was worth going forward with. There was nothing that held up a huge red flag and said, this is completely made up out of whole cloth. And this, of course, was before the scandal of informants had come out and it really became known that informants would, in fact, take small pieces of information and use them for their own advantage. So there's nothing in the record to show that these officers had any reason to believe that they were framing an innocent man. Yes, they had evidence that there was other involved parties, but they had no reason to believe and every reason not to believe that this had been done by one person, that Mr. Powell may have been involved, did not by any means show that Mr. Hall was innocent. He had knowledge of the crime and the details of the crime and he admits that he told those to the informants in the holding cell. Let me ask you another question, just changing the topic just a little bit. On the summary judgment for the city, this record is a little tough for me on that particular issue. The court says that counsel threw in the towel on this issue and then he just submitted it on the briefs, but the court also, you know, then seems to suggest that what counsel is doing is that he's giving up on the issue. But I didn't find anything in the record to suggest counsel ever did give up on the issue. How do I get there? Your Honor, I would actually agree with the court. I think that it was very vague and ambiguous at best that whether it was just not being argued or whether it was being conceded. We're talking about the Minnell issue, if I remember correctly. Yes, we are. Summary judgment for the city of Los Angeles. Correct. Well, of course, if there's no constitutional violation, then it doesn't become an issue at all. But even if it were returned to the district court for further hearings or potentially trial on the constitutional violation, there is no evidence whatsoever of a Minnell violation. The mere fact that informants were being used at that time and LAPD had not yet presciently determined to warn their officers that false confessions were routinely being created by informants is simply not enough for a Minnell violation. One of the detectives, I believe it was Crocker, testified that, well, you know, I knew these people were in jail. You had to, you know, be a little bit careful. And really that's all anybody knew at that time. So I would say that whether it was conceded or not. Is the issue teed up for me? Can I determine on summary judgment this particular issue? Yes, Your Honor, I believe you can, whether it was argued or not. Even given what the district court said? The district court had all of the evidence in front of it. It chose not to rule on it because for whatever reason it believed it had been conceded. But this is de novo review, and this Court can look at that same evidence that was before the district court and see that there is simply no evidence to raise tribal issues on the Minnell claim. Thank you. The Court has any other questions? No other questions. Thank you very much. Thank you. I think I had 46 seconds. That's 42, actually. First of all, as to the preclusion issue, counsel refers to a necessarily decided, which is a separate and distinct question of necessary to support the judgment. Necessarily decided arises when you have a general verdict and you're trying to look behind it to see what the jury necessarily would have decided. So that doesn't help their position at all. The Court is also right that the different standard of review in a habeas also means that it's not preclusion. And the Keating case that we cited in our brief is exactly on point on that issue. Getting to the facts that support the judgment, there were huge red flags in this case that made these detectives know that they had the Mr. Hall was innocent. And the one that keeps coming back is Theodery Powell. She says that, well, Theodery Powell could have been involved. And, in fact, they admit in their briefs that Theodery Powell continues to be a suspect. If that's true, and they knew this was a multiple perpetrator murder, if they thought there was any chance at all Mr. Hall was connected with Mr. Powell, why didn't they ask Mr. Hall what time of the day the murder happened? Because it would have happened in a very short window of time. They never asked him that. Why didn't they ask Mr. Hall, do you know Theodery Powell? Can you give us any information about Theodery Powell? They would have asked those questions before they did not want to get the wrong answer. And that's why they said it with information from Cornelius Lee. Thank you very much. Thank you. Case 0756853, Hall v. The City of Los Angeles, is now submitted. Thank you very much, counsel, for your argument. We appreciate it. And court stands in recess. Thank you.
judges: Fernandez, Smith N. R., Mills